Douglas E. **MOORE**, Plaintiff,

v.

**BOARD OF ELECTIONS FOR** the **DIS-
TRICT OF COLUMBIA** et al.,
Defendants,

Free **D. C. Movement** et al., **Intervenors.**

Civ. A. No. 3296–70.

United States District Court,
District of Columbia.

Nov. 19, 1970.

James W. Cobb, Washington, D. C.,
for plaintiff.

Frederick Lee Ruck, Asst. Corp. Coun-
sel, Washington, D. C., for defendants.

Landon Dowdey, Washington, D. C.,
for Intervenors.

Before McGOWAN, Circuit Judge,
and WADDY and GESELL, District
Judges.

OPINION

GESELL, District Judge:

The District of Columbia Delegate
Act, Public Law 91–405, Title II, was
enacted by Congress on September 22,
1970, 84 Stat. 845. On November 6,
1970, Douglas E. Moore, a candidate for
the office of Delegate, filed this action

on behalf of himself and all other actual or potential independent candidates to declare unconstitutional and restrain the enforcement of certain provisions of the Act. Plaintiff's motion for a temporary restraining order was denied on November 10, 1970, and a three-judge court was convened pursuant to 28 U.S.C. §§ 2282, 2284. Julius Hobson and other plaintiffs in Civil Action No. 3340–70 have been granted a limited intervention on issues common to both suits. The issues were submitted for final decision on affidavits, briefs, and arguments of counsel on November 16. Sturgis Warner, Esquire, appeared as amicus at the request of the Court and supplied useful information concerning the legislative and executive background of the Act which is now a part of the record of these proceedings.

Plaintiff urges that the scheme of the Act is designed to foreclose independent candidates and favor the official representatives of major parties. This contention is based on three provisions of the Act (sections 203(i), 203(j) (1) and 203(*l*)) which it is claimed have a cumulative effect resulting in an invidious discrimination against independent candidates. Briefly stated, the complaint points to the fact that independent candidates must obtain more signatures for nomination than primary candidates; that they must solicit signatures later than primary candidates; and that they may be foreclosed from obtaining signatures from registered voters who have already signed a nomination petition for a primary candidate. Plaintiff invokes the Fifth and Fourteenth Amendments to the Constitution.

The first election of a non-voting Delegate to the House of Representatives to be held under the Act is scheduled for March 23, 1971, following primary elections to be held January 12, 1971. The mechanics of the scheduled Delegate election, as required by the Act under regulations of the Board of Elections promulgated pursuant thereto,[1] will be briefly outlined.

Persons wishing to stand in the general election for Delegate may enter a party primary or may proceed directly into the general election by nomination as an independent candidate. Primary candidates must file petitions 45 days before the primary and independent candidates 45 days before the general election. Nominations in the primary require 2,000 signatures of voters registered as members of the particular party holding the primary. Nominations directly for the general election require signatures of 2% of all registered voters, or 5,000 signatures, whichever is less; in the current election it appears that the number required will approximate 4,500 signatures. This figure is based on Corporation Counsel's representation at oral argument that 219,000 voters were registered as of November 16, 1970.

No signature obtained by primary candidates or independents more than 99 days from the primary or general election date, respectively, will be counted. Thus each candidate has 54 days in which to obtain the required signatures. Primary candidates may start October 21 and file December 14, while independent candidates may start December 30 and file by February 22. There is no restriction as to when a candidate, whether he stands in a primary or as an independent in the general election, may declare his candidacy and no time restriction on political activity. Indeed any candidate may solicit promises of signatures for his petition well before the permissible date for obtaining actual signatures.

---

The two major parties are the only parties qualified under section 203(h) to hold primary elections in this first election. Any independent candidate whose party polls 7500 or more votes in the general election will, however, be qualified to hold a primary when the next Delegate election is held in November 1972.[2]

 Before turning to a discussion of the statutory provisions specifying the time within which signatures must be obtained and the number of signatures required, it will be appropriate to resolve an important question of statutory interpretation that underlies plaintiff's arguments. It is suggested that by reason of section 203(*l*), a large number of voters will be barred from signing nominating petitions of independent candidates because they will have already signed one of the 20 to 30 petitions now being circulated by primary candidates. Obviously if the Act invalidates the signature on a general election nominating petition of any voter who has previously signed a petition nominating a candidate in a primary, independent candidates would face special obstacles. Section 203(*l*) reads:

> The signature of a registered voter on any petition filed with the Board and nominating a candidate for election in a primary or general election to any office shall not be counted if, after receipt of a timely challenge to such effect, the Board determines such voter also signed any other valid petition, filed earlier with the Board, and nominating the same or any other candidate for the same office in the same election.

Though the terms of this provision are somewhat ambiguous, the Court notes that the Board of Elections has agreed unanimously that

> it must count the signature of a registered voter on a petition for a duly qualified candidate seeking to be nominated directly in the general election of March 23, 1971, without regard to whether such registered voter may have signed any other valid petition filed with the Board in the primary election of January 12, 1971.

> (Letter of J. E. Bindeman, Chairman of the Board of Elections, Nov. 13, 1970; attached as Exhibit 3 to Defendants' Motion to Dismiss.)

The Board thus interprets the word "in the same election" to refer separately to the primary election and the general election, thus qualifying a voter to sign a petition in the primary and another petition in the general election. As this interpretation is reasonable and minimizes any possible constitutional infirmity, the Court declares the Board of Elections' interpretation of section 203(*l*) to be the proper interpretation of the section.

 Turning to the other challenged provisions of the Act, it must be emphasized at the outset that the signature requirements of 2,000 for primary candidates and 2% or 5,000 for independents are not comparable. A candidate who gathers 2,000 signatures in the primary is not thereby entitled to run in the general election; he must first prevail in the primary.[3] Moreover, the signatures for primary candidates may be secured only from registered party members, who may constitute a relatively small

---

2. Though the Board of Elections has yet to issue a regulation on the subject, the Court has been advised that the ballot in the Delegate election will contain the party designation of each candidate who represents a qualified political party. In the 1968 election of Presidential electors, the Board ruled that any group could qualify as a political party if ten voters registered as members of that party. See Minutes of the District of Columbia Board of Elections, July 10, 1968, p. 2.

3. Indeed, section 203(j) (2) prohibits any unsuccessful primary candidate from utilizing the petition process to get on the ballot in the general election, although he may of course be a write-in candidate under § 6.3 of the Election Regulations. Since neither the plaintiff nor the intervenor in this suit has filed or sought to file as a candidate in any primary, no challenge to this provision is presently before the Court.

number, while signatures for the general election may be obtained from the electorate at large.

The 2% or 5,000 signature provision must therefore be examined on its own merits to determine whether it is manifestly discriminatory against independent nominations when contrasted with the entire process of party nomination by the major parties. As of August 31, 1970, there were approximately 155,000 Democrats and 31,000 Republicans registered. Thus the nominating petitions of primary candidates must contain signatures from approximately 1.25% of the Democrats or 6% of the Republicans, percentages that bracket the 2% required for independent candidates. Moreover, experience in the District in the few elections that have been held demonstrates that a 2% requirement involving something between 4,000 and 5,000 signatures is not unrealistic. In the 1968 Presidential election, with fewer voters registered, two minor parties were able to get 6,500 and 8,000 signatures, respectively, in spite of a late start, limited campaigning, and the obvious dominance of major parties in a Presidential election. It is also significant that in the first city-wide election for the Board of Education, held in 1968, there were nine candidates who qualified at large. In this election, 1,000 signatures were required apportioned 125 per ward over eight wards. The 2% requirement here in issue does not require signatures from every section of the city. Moreover, registrations have increased since 1968 and the special significance of the office of Delegate is certain to attract wider public interest and voter support. The 2% requirement was selected after consideration by the Congress which had before it the recommendations of the Department of Justice, Civil Rights Division, and others interested in establishing a genuine franchise for the District. This requirement is a substantial reduction from the 5% provision governing independent nominations in Presidential elections, and gives no support to plaintiff's claim that the legislation was engineered blatantly to favor the major parties.

Plaintiff places primary reliance on Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), in which Ohio's restrictions on third-party access to the ballot were invalidated as offensive to the Fourteenth Amendment. The Ohio statute required a nominating petition signed by 15% of registered voters, a party primary, a party convention apportioned according to party strength in various parts of the state, and endorsements by voters who had failed to vote for any other party in the preceding election. The Court did not invalidate any of these requirements standing alone, but found that "the totality of the Ohio restrictive laws taken as a whole imposes a burden on voting and associational rights which we hold is an invidious discrimination under the Equal Protection Clause." 393 U.S. at 34, 89 S.Ct. at 12.

Where less stringent requirements have been imposed, they have been uniformly upheld in the absence of distributional restrictions which offend the principle of one man, one vote. In Lyons v. Davoren, 402 F.2d 890 (1st Cir.1968), cert denied, 393 U.S. 1081, 89 S.Ct. 861, 21 L.Ed.2d 774 (1969), the court found insubstantial a challenge to a Massachusetts law requiring independent candidates for Congress to file petitions bearing signatures equal to 3% of the gubernatorial vote in their respective districts. In Georgia Socialist Workers Party v. Fortson, 315 F.Supp. 1035 (N.D.Ga.1970), a three-judge court upheld Georgia's requirement that a third-party candidate secure the signatures of 5% of the eligible voters in the last preceding election.

There is no need for any extended discussion of the related attack on the 99-day provision. An identical provision will be found in the Act providing for election of the Board of Education. Obviously some time limit is required as a practical matter to assure that only qualified signatures are obtained and

the petitions reflect current attitudes of voters. To allow plaintiff to secure signatures simultaneously with primary candidates, as he requests, would discriminate in his favor, since his petition must be filed later than those of primary candidates, and would lead to a most confused situation.

Congress properly recognized the need to limit candidates' access to the ballot through a process of petitions, primaries, and runoffs in order to minimize confusion and ensure that voters in the final election are presented only with candidates who have substantial support in the community. In fashioning such a process, Congress had to establish some balance between the competing goals of guaranteeing access to the ballot by qualified candidates, and limiting the field of candidates in the general election to a manageable number. The Court may not substitute its own judgment for that of Congress in determining the optimum resolution of these factors, but must inquire only whether the provisions of the Delegate Act place unreasonable restrictions on independent candidacies or arbitrarily discriminate against independents in favor of candidates from the major parties. For the reasons stated, it is apparent that the challenged provisions involve no such discrimination or restriction. Judgment shall be entered on the merits for defendants in accordance with this Opinion and the complaint accordingly is dismissed.

The foregoing constitutes the Court's findings of fact and conclusions of law and declaratory judgment. The Court's Order is attached.

### ORDER

This case having come on for hearing before a three-judge court, convened pursuant to 28 U.S.C. § 2284, and the Court having determined that Public Law 91–405 is not unconstitutional in any respect challenged by plaintiffs in view of the reasons and interpretations declared in an opinion filed this date, it is accordingly this 19th day of November, 1970,

Ordered that the plaintiff's motion for injunction be and it is hereby denied and that final judgment be and it is hereby entered for defendants.